IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

KRISTEN M. BROWN                                                    PLAINTIFF

            v.                        Civil No. 10-3111

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                     DEFENDANT

<u>**MEMORANDUM OPINION**</u>

         Plaintiff, Kristen Brown, brings this action under 42 U.S.C. § 405(g), seeking judicial review

of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim

for supplemental insurance benefits ("SSI") under Title XVI of the Social Security Act (hereinafter "the

Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine

whether there is substantial evidence in the administrative record to support the Commissioner's

decision.  *See* 42 U.S.C. § 405(g).

**I.      <u>Procedural Background</u>:**

         The plaintiff filed her application for SSI on May 23, 2006, alleging an onset date of April 17,

1999, due to scoliosis status post fusion surgery, right ankle pain, headaches, asthma, obesity, cognitive

disorder, and mood disorder.  Tr. 71-72, 92-96, 106-111.  Her applications were initially denied and that

denial was upheld upon reconsideration.  Tr. 24-27, 30-32.  Plaintiff then made a request for a hearing

by an Administrative Law Judge ("ALJ").  An administrative hearing was held July 3, 2008.  Tr. 299-

351.  Plaintiff was present and represented by counsel.

         At this time, plaintiff was 25 years of age and possessed a tenth grade education.  Tr. 18, 56,

304-305, 310.  She had no past relevant work ("PRW") experience.  Tr. 99-104.

         On October 3, 2008, the ALJ found that plaintiff's scoliosis, obesity, cognitive disorder, and

mood disorder were severe, but did not meet or medically equal one of the listed impairments in

Appendix 1, Subpart P, Regulation No. 4.  Tr. 14-15.  After partially discrediting plaintiff's subjective

complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to

perform sedentary work, except that she could lift and carry 10 pounds frequently and 20 pounds occasionally; sit for 4 hours during and 8-hour workday; and, stand and walk for 2 hours during and 8-hour workday.  The ALJ also found that Plaintiff would need to alternate between sitting, standing, and walking; could not climb ladders, ropes, or scaffolds; could only occasionally climb ramps/stairs, bend, stoop, crouch, crawl, kneel, and balance; could not perform work around unprotected heights or dangerous equipment such as inherently life threatening moving machinery; and, could only perform wok involving simple job instructions, requiring little judgment, involving routine and repetitive tasks, and necessitating only superficial contact with the public and co-workers.  Tr. 56-60.  With the assistance of a vocational expert, the ALJ found plaintiff could perform work as an inspector/sorter and bench assembly worker.  Tr. 18-19.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on October 6, 2010.  Tr. 3-6.  Subsequently, plaintiff filed this action.  ECF No. 1.  This case is before the undersigned by consent of the parties.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF No. 9, 10.

## II.  __Applicable Law__:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible

2

to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   **Evidence Presented**:

On April 22, 2005, Plaintiff underwent a general physical exam. Tr. 121-127. She complained of lower back pain, chronic headaches, visual disturbances, and shortness of breath. Plaintiff indicated that she had undergone fusion surgery for scoliosis at age 11 and currently smoked cigarettes. An

AO72A
(Rev. 8/82)

examination revealed an obese female with normal breath sounds, a normal range of motion in all areas, some evidence of muscle spasm, and scoliosis.  She walked well and had a normal gait, could walk on her heel/toes, and could squat and arise from a squatting position without difficulty.  No evidence of psychosis was noted, and Plaintiff was oriented in all spheres.  The doctor diagnosed her with lower back pain with a history of surgery for scoliosis, questionable migraine headaches, and questionable shortness of breath.  No limitations were noted.  Tr. 121-127.

On April 11, 2006, Dr. Hassan Albataineh conducted a general physical exam of Plaintiff.  Tr. 129-135.  She reported a history of scoliosis with continued lower back pain status post fusion surgery and right ankle pain.  Plaintiff also complained of dyspnea with moderate exertion, which she blamed on the fact that doctors had to collapse one of her lungs during the scoliosis fusion surgery.  Dr. Albataineh noted that Plaintiff could not walk two blocks without experiencing dyspnea.  An examination revealed some intermittent claudication, but a normal range of motion in all areas, a negative straight leg raise test, no muscle weakness, and no atrophy.  Dr. Albataineh diagnosed Plaintiff with scoliosis, lower back pain, right ankle pain, and dyspnea with moderate exertion.  He concluded that she would have mild limitations with regard to walking, standing, lifting, and carrying.  Tr. 129-135.

On April 25, 2006, Plaintiff sought treatment for a sprained ankle.  Tr. 285-287.  X-rays of her right ankle revealed no evidence of a fracture or dislocation.  Tr. 285-287.

On December 6, 2006, Plaintiff sought emergency treatment for a migraine headache.  Tr. 240-242.  She stated that Hydrocodone was not working.  A physical examination was normal.  Plaintiff was administered Reglan and Benadryl via IV, after which she reported improvement of her symptoms.  Plaintiff was advised to follow-up with her treating physician.  Tr. 240-242.

On December 28, 2006, Dr. Vann Smith performed a neuropsychological assessment of Plaintiff.  Tr. 150-159.  She reported a history of asthma, migraine headaches, and closed head injuries.  Initially, Dr. Smith noted slowly progressive neurocognitive symptoms including impaired recall/declarative

4

memory, impaired attention to sequential detail, impaired concentration, word finding difficulty, affective lability, sleep pattern disturbance, and dysexecutivism. However, he found her to be alert, cooperative, soft spoken, and oriented on all spheres. Her memory, judgment, and insight were intact, and her affect was full ranging and flexible. Further, Plaintiff's mood was mildly anxious with no evidence or complaints of hallucinations, delusions, or suicidal or homicidal ideations. Physically, her gait was slow and hesitant and her posture was guarded with occasional position shifts. Testing revealed a full scale IQ of 87. Dr. Smith diagnosed Plaintiff with mild to moderate cognitive dysfunction secondary to the closed head injuries she suffered at the hands of her younger brother, and mood disorder. He assessed her with a global assessment of functioning score of 50, and noted her prognosis to be fair. It was his opinion that Plaintiff was disabled.

Dr. Smith also completed an RFC assessment. He indicated that Plaintiff would be unable to compete in the following areas: remember work-like procedures; maintain attention for two hour segments; maintain regular attendance and be punctual within customary and usually strict tolerances; sustain an ordinary routine without special supervision; complete a normal workday and workweek without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; understand, remember, and carry out detailed instructions; set realistic goals or make plans independently of others; and, deal with the stress of semiskilled or skilled work. Further, Dr. Smith opined that she would be seriously limited with regard to carrying out very short simple instructions; working in coordination with or proximity to others without being unduly distracted; responding appropriately to changes in a routine work setting; dealing with normal work stress; being aware of normal hazards and taking appropriate precautions; traveling in unfamiliar places; and using public transportation. He also indicated that she would miss more than four days of work per month. Tr. 150-159.

5

On April 2, 2007, Plaintiff complained of acute right ankle pain.  Tr. 236-239.  She was tender to palpation, but had good strength and range of motion with intact sensation.  An x-ray revealed soft tissue swelling, but no fracture.  The doctor prescribed crutches, weight bearing as tolerated, ice, elevation, and Ultram.  Tr. 236-239.

On October 5, 2007, Plaintiff presented in the emergency room following an automobile accident.  Tr. 207-211.  She complained of lower back pain.  X-rays revealed scoliosis of the lumbar spine and degenerative changes at the L4 level.  An old clay shoveler's fracture was also seen on the distal portion of the spinous process of the C7.  Plaintiff was diagnosed with back strain and scoliosis.  She was prescribed Vicodin and Naproxen.  Tr. 207-211.

On November 14, 2007, Plaintiff complained of back and abdominal pain.  Tr. 204-206.  She had experienced a miscarriage in June and reported pain ever since.  Plaintiff had not seen her gynecologist because she no longer had insurance and could not afford to pay for an appointment.  An examination revealed mild suprapubic tenderness without rebound or guarding.  The doctor determined that her pain was likely related to ovarian cysts that had been accentuated since her miscarriage.  Plaintiff was administered Toradol and Norflex injections, as well as a prescription for Ultram.  Tr. 204-206.

On April 9, 2008, Plaintiff was treated in the emergency room for lower back and abdominal pain, as well as left ear pain.  Tr. 199-200.  She thought she had a urinary tract infection.  Testing revealed that she was four weeks pregnant.  Plaintiff was diagnosed with musculoskeletal pain and otalgia.  Tr. 199-200.  In May 2008, Plaintiff had a miscarriage.  Tr. 175-184.

On June 2, 2008, Dr. Ted Honghiran completed an orthopedic evaluation of Plaintiff.  Tr. 160-162.  He noted her history of scoliosis of the thoracolumbar spine and spinal fusion at age 11, as well as her continued chronic lower back pain.  An examination revealed a full range of motion in the lumbosacral spine and a negative straight leg raise on both sides.  She did exhibit an obvious hump in her back with forward flexion on the right, due to thoracolumbar scoliosis.  Dr. Honghiran indicated that

6

it was understandable that Plaintiff would have some type of back pain for the rest of her life. Due to her limited education, he did not feel she would be able to get a job that did not require any lifting, bending, or stooping. He then completed an RFC assessment concluding that Plaintiff could frequently lift up to 10 pounds and occasionally lift up to 50 pounds, but never left more. Further, she could sit, stand, and walk consecutively for one hour at a time; sit for a total of 4 hours per 8-hour day; stand/walk for a total of 2 hours per 8-hour workday; occasionally push/pull with both hands, climb, stoop, kneel, crouch, crawl, work near moving mechanical parts, and operate a motor vehicle; frequently operate foot controls with both feet; and, never work near unprotected heights. However, he noted that she could shop, travel with a companion without assistance, walk a block at a time at a reasonable pace on a rough or uneven surface, climb a few steps at a reasonable pace with the use of a single hand rail, and care for her personal hygiene. Tr. 160-162.

On June 16, 2008, Plaintiff presented in the emergency room with complaints of nausea, vomiting, mild rectal pain, a productive cough, wheezing, and fever. Tr. 169-174. An examination revealed expiratory wheezing and mildly decreased breath sounds bilaterally. A chest x-ray showed interstitial change in the chest, but nothing acute. Xoponex was administered with fair resolution of the wheezing. Plaintiff was diagnosed with brochitis, constipation, and post-tussive emesis (vomiting caused by violent coughing). She was prescribed Xoponex and Atrovent MDI treatments, Zithromax, a Fleet enema, and Magnesium Citrate. Tr. 169-174.

IV.   **Discussion:**

Plaintiff contends that the ALJ erred by improperly determining that Plaintiff was not credible, failing to properly consider Dr. Honghiran's opinion, and relying on the testimony of a vocational expert that was contradicted by the Dictionary of Occupational Titles. We will begin our analysis with an evaluation of Plaintiff subjective complaints and the medical evidence of record.

7

A.    **Subjective Complaints:**

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints:  (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

The standard of evaluation is not whether plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents him from performing any kind of work).

At the onset, Plaintiff contends that the ALJ failed to apply the *Polaski* factors and provide specific reasons for discrediting Plaintiff's testimony. Although the ALJ never expressly cited *Polaski* (which is our preferred practice), the ALJ cited and conducted an analysis pursuant to 20 C.F.R. § 416.929, which largely mirror the *Polaski* factors. *See Randolph v. Barnhart,* 386 F.3d 835, 842 (8th Cir.2004). Specifically, the ALJ found that Plaintiff did not take prescription pain medication in spite of her alleged severe pain, she  remained capable of being the primary care giver for her four year old

daughter, her daily activities were relatively normal, she continued to smoke in spite of reported financial difficulties in obtaining medication and treatment, and the objective medical evidence failed to support her subjective complaints.  We conclude the ALJ adequately, if not expressly, applied the *Polaski* factors and discounted Plaintiff's subjective complaints of pain.  *See, e.g., Goff*, 421 F.3d at 791-92.

1.  **Physical Limitations:**

The record reveals that Plaintiff had been diagnosed with scoliosis and undergone fusion surgery at age 11.  In spite of the relative success of the surgery, she had continued to experience at least some degree of pain and discomfort.  However, physical exams conducted during the relevant time period were essentially unremarkable.  *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider).  In 2005, she had a normal range of motion in all areas, walked well, had a normal gait, could walk on her heel/toes, and could squat and arise from a squatting position without difficulty.  In 2006, Plaintiff continued to exhibit a normal range of motion in all areas, a negative straight leg raise test, no muscle weakness, and no atrophy.  Dr. Albataineh noted that she would have only "mild" limitations with regard to walking, standing, lifting and carrying.  Tr. 129-135.  X-rays conducted in 1007, following an automobile accident, revealed scoliosis of the lumbar spine with degenerative changes at the L4 level.  An old clay shoveler's fracture was also seen on the distal portion of the spinous process of the C7.  Tr. 207-211.  Then, in 2008, Dr. Honghiran's evaluation again revealed a full range of motion in the lumbosacral spine and a negative straight leg raise.  A hump was noted with forward flexion, due to the scoliosis.  Dr. Honghiran indicated that Plaintiff would be limited with regard to sitting, standing, walking, pushing/pulling, climbing, stooping, kneeling, crouching, crawling, working near moving mechanical parts, operating motor vehicles, and working near unprotected heights.  Tr. 160-162.  However, aside from his opinion that her limited education and physical limitations would make it difficult for her obtain employment, there is no evidence to indicate that Plaintiff was unable to perform work-related tasks.  *See Raney v. Barnhart*,

9

396 F.3d 1007, 1010 (8th Cir. 2005) (none of the claimant's treating physicians opined the claimant was

so impaired or disabled that the claimant could not work at any job).

The evidence also makes clear that Plaintiff was not taking any prescription pain medication.

*Nelson v. Sullivan,* 966 F.2d 363, 367 (8th Cir.1992) (the mere use of nonprescription pain medication

is inconsistent with complaints of disabling pain).   Instead, she took over-the-counter medications to

treat her pain.  Plaintiff contends that she was unable to obtain prescription medications due to a lack

of insurance and financial constraints.  We note that Plaintiff did not seek treatment for her condition

from a treating physician, rather went to the emergency room, which she also blamed on her lack of

insurance.  However, the record is devoid of any evidence showing that Plaintiff had been denied access

to medical treatment or prescription pain medications on account of her financial constraints.  *Goff v.

Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (holding that the ALJ correctly discounted the plaintiff's

subjective complaints when there was no evidence that the plaintiff was ever denied medical treatment

due to financial reasons).  In fact, there is no evidence that she ever even sought out indigent or reduced

rate medical treatment or medication.  And, Plaintiff elected to continue smoking cigarettes in lieu of

using that money to help obtain medication and treatment.  *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir.

1999).  Accordingly, we can not say that her failure to obtain medication is excused by her financial

hardship.

Plaintiff also complained of right ankle pain.  The record reveals that she sprained this ankle on

at least two occasions during the relevant time period.  However, x-rays repeatedly revealed no evidence

of fracture or dislocation.  Further, none of her physical exams revealed any range of motion limitations

in the ankle.  *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective

medical evidence is a factor an ALJ may consider).  Therefore, while we do believe it is likely that she

continued to experience some degree of pain and discomfort in the ankle once the sprains had healed,

we do not find this condition to be disabling.

10

Plaintiff was also mildly obese.  Although there is some evidence in the record to show that plaintiff was obese, we can find no evidence to indicate that plaintiff's obesity prevented her from performing work-related activities.  None of her treating doctors suggested her weight imposed any additional work-related limitations, and she did not testify that her weight imposed additional restrictions.  *See Anderson v. Barnhart,* 344 F.3d 809, 814 (8th Cir. 2003).

We note that a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis.  *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).  Therefore, although it is clear that plaintiff suffers from some degree of impairment related to her scoliosis that is likely exacerbated to some degree by her obesity, she has not established that she is unable to engage in any and all gainful activity.  *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).  Neither the medical evidence nor the reports concerning his daily activities supports plaintiff's contention of total disability.

Plaintiff was also treated for asthma and a migraine headache on one occasion during the relevant time period.  The ALJ did not find this impairment to be severe.  A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'"  *See Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)).

Records indicate that her asthma was responsive to treatment.  *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (stating an impairment that can be controlled by treatment or medication is not considered disabling).  Tr. 169-174.  No pulmonary function tests were ever performed to evaluate her lung function, so it appears that her condition was not severe enough to warrant such testing.  And, Plaintiff admitted to smoking at least one package of cigarettes every three days in spite of her asthmatic

11

condition.  Research makes clear that smoking actually exacerbates asthma.  Accordingly, we do not find her asthma to be a severe impairment.  *See id.*

Like her asthma, Plaintiff's headache was responsive to medication.  *Brown*, 390 F.3d at 540.  And, given the fact that she was treated for only one migraine between 1999 and 2008, we do not believe that her headaches constituted a severe impairment.  *See Pelkey*, 433 F.3d at 577.

### 2.    **Mental Limitations:**

Although Plaintiff contends that she is disabled due to a mood disorder, namely depression, and a cognitive disorder, we can find no evidence that she sought out treatment for these conditions during the relevant time period.  She did not complain of symptoms associated with these disorders, was never prescribed antidepressants or anti-anxiety medications by any of the doctors treating her, and did not seek out mental health treatment.  *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).  Two general physical exams revealed no evidence of psychosis and orientation in all spheres.  No depression or anxiety was noted.  Multiple emergency room visits also failed to reveal any complaints of mental or emotional distress.  So, aside from Dr. Smith's assessment, there is no evidence to indicate Plaintiff was suffering from any type of a mood or cognitive disorder.  In fact, Plaintiff remained able to care for her four year old daughter while her husband was away at work, reported no difficulty getting along with others, stated that she talked on the phone regularly, and reported taking her children to play with her friends' children three to four times per week.  Tr. 84-91.  We find these activities to be incompatible with a claim of disability.

Plaintiff does contend that she was unable to obtain mental health treatment due to her lack of insurance and financial inability to pay for treatment.  However, as addressed above, we do not find this to be a valid excuse, as she did not even attempt to obtain treatment.  *See Goff*, 421 F.3d at 790.

AO72A
(Rev. 8/82)

   3.     **Mother's Testimony:**

Plaintiff mother testified on her behalf.  We note, however, that her testimony was primarily cumulative of Plaintiff's testimony.  Tr. 326-329.  She was able to provide little other than to corroborate Plaintiff allegations that she experienced difficulty standing and bending.  It is clear that the ALJ properly considered this testimony but found it unpersuasive.  This determination was within the ALJ's province.  *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

   4.     **Activities of Daily Living:**

Plaintiff's own reports concerning her daily activities also undermine her claim of disability. On July 29, 2006, Plaintiff completed an adult function report, on which she reported that her daily activities included making breakfast for her children, cleaning house, taking her children out to play, making lunch, taking the children swimming, cooking dinner, bathing her children, and getting her children ready for bed.  Tr. 84-91.  She also reported the ability to care for the family cats, prepare meals, do laundry, do the dishes, vacuum, walk, drive a car, ride in a car, go out alone, shop for groceries and clothing, pay bills, count change, handle a savings account, use a checkbook/money orders, read, watch television, talk on the phone, and take the children to play with friends three to four times per week.  *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).  Clearly, these are not the daily activities one would expect a disabled person to be able to perform.

13

B.          **The ALJ's RFC Assessment:**

We next examine the ALJ's RFC assessment.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or his RFC.  *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or his limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The ALJ properly considered plaintiff's subjective complaints, the objective medical evidence, and the RFC assessments of the non-examining, consultative doctor.  On August 18, 2006, Dr. Alice Davidson completed a physical RFC assessment of Plaintiff.  Tr. 138-145.  After reviewing Plaintiff's medical records, she concluded Plaintiff could perform medium level work involving frequent climbing, balancing, kneeling, and crawling and occasional stooping and crouching.  This assessment was affirmed on December 21, 2006, by Dr. Bill Payne.  Tr. 146-148.

We also note Dr. Honghiran's assessment that Plaintiff could sit, stand, and walk consecutively for one hour at a time; sit for a total of 4 hours per 8-hour day; stand/walk for a total of 2 hours each per 8-hour workday; frequently lift up to 10 pounds and occasionally lift up to 50 pounds, but never lift more; occasionally push/pull with both hands, climb, stoop, kneel, crouch, crawl, work near moving mechanical parts, and operate a motor vehicle; frequently operate foot controls with both feet; and, never

14

work near unprotected heights.  Plaintiff contends that his statement regarding her limited education and his belief that she would not be able to get a job that did not require any lifting, bending, or stooping shows that he found her to be disabled.  However, we believe he was simply stating his belief that there would not be any jobs available for a person with her limitations.[1]  His assessment of her abilities makes clear that she was able to perform some work within the sedentary range.  Accordingly, we can not say that the ALJ failed to properly consider Dr. Honghiran's assessment.

From a mental perspective, we again note that Plaintiff sought out no mental health treatment during the relevant time period.  We can also find no evidence that she was ever even prescribed medication to treat depression, a mood disorder, or a cognitive disorder.  The only evidence that Plaintiff was suffering from a mental disorder was presented by Dr. Smith, who examined Plaintiff on only one occasion.  *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence).  Based on her subjective reports, he then diagnosed her with cognitive disorder and mood disorder and concluded that she was disabled.  Had Plaintiff been as impaired as alleged by Dr. Smith, we do not believe she would have been able to care for her four year old daughter and perform many of the activities she reported performing.  We also believe she would have sought out treatment for her symptoms, as the degree of impairment alleged by Dr. Smith would have interfered with her ability to perform activities of daily living and care for her family.  The record contains no such evidence.  In accordance, we find that the ALJ's RFC assessment is supported by substantial evidence.

---

[1]We find that the question of availability of jobs for a person with certain limitations is a question more appropriately addressed to a vocation expert.  Vocational experts are well versed in the various fields of employment, the requirements of these jobs, and the availability of positions for persons with specified limitations.

###### C.   Vocational Expert's Testimony:

Testimony from a vocational expert based on a properly-phrased hypothetical question constitutes substantial evidence. *See Cruze v. Chater,* 85 F.3d 1320, 1323 (8th Cir. 1996); *cf. Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir. 1994) (when hypothetical question does not encompass all relevant impairments, VE's testimony does not constitute substantial evidence to support the ALJ's decision). The ALJ's hypothetical question needs to "include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Id.* (citing *Stout v. Shalala,* 988 F.2d 853, 855 (8th Cir.1993)); *see also Morse v. Shalala,* 32 F.3d 1228, 1230 (8th Cir.1994).

The vocational expert testified that a person of plaintiff's age, education, and work background with the above RFC, could still perform work as an inspector, sorter, and weigher. Tr. 326-329. Plaintiff contends that the ALJ's reliance on the expert's testimony is misplaced because the expert stated that he was identifying sedentary jobs that an individual with Plaintiff's RFC could perform. Plaintiff points out that her RFC makes clear that she could not sit the requisite 6 hours per day that sedentary work entails. A review of the hearing testimony reveals that the ALJ advised the expert that Plaintiff would only be able to sit for four hours per day and she would need a job with a sit/stand/walk option. In response, the expert identified the positions of inspector, sorter, and weigher, stating there were an estimated 51,000 of these position in the national economy that allowed for a "sit/stand" option.

Plaintiff argues that a "sit/stand option" would not adequately meet her needs. We note that the ALJ indicated that Plaintiff would need a "sit/stand/walk" option. She then explained that the walking requirement did not include walking away from the work area. The walking component simply involved being able to take one or two steps away from the work station so that Plaintiff would not be required to stand perfectly still. Tr. 331. Given the ALJ's description of the walking component, we find that a "sit/stand option", as that term is traditionally defined, would adequately meet Plaintiff's needs.

16

The specific examples of occupations the vocational expert identified also do not require stooping, crouching, climbing, balancing, kneeling, or crawling.  Tr. 331-333.  *See* DICTIONARY OF OCCUPATIONAL TITLES § 521.687-086, 713.687-018, *at* www.westlaw.com.  Further, the vocational expert indicated that he had decreased the total number of positions available by 25% to allow for the decrease in the number of positions available due to Plaintiff's need for a sit/stand option.  Therefore, we find that any conflict with the Dictionary of Occupational Titles was adequately explained by the expert.  Accordingly, because the hypothetical questions posed to the expert contained the impairments the ALJ found to be supported by the record, and any conflicts with the Dictionary of Occupational Titles were adequately explained, we find substantial evidence to support the ALJ's determination that plaintiff could perform these jobs.

## V.    Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 30th day of January 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

17

AO72A
(Rev. 8/82)